Filed 7/23/26  P. v. Jimenez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

| | |
|---|---|
| THE PEOPLE,<br>    Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY JESUS JIMENEZ,<br>    Defendant and Appellant. | C100803<br><br>(Super. Ct. Nos. 23CF00879,<br>23CF03674, 23CF04886) |

Defendant Anthony Jesus Jimenez appeals after he was found guilty and sentenced in three cases.  On appeal, he challenges his conviction in one of those cases, arguing the court made multiple evidentiary errors and the prosecutor committed prejudicial error by misstating the burden of proof.  Defendant also challenges his sentence, arguing the court improperly imposed an upper term, a consecutive sentence, and terms on two convictions that should have been stayed pursuant to Penal Code[1] section 654.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant was convicted of three crimes in case No. 23CF03674 (stalking case)—stalking, misdemeanor sexual battery, and corporal injury.  The information provided the convictions were based on defendant's conduct occurring in September 2021.  At trial, the evidence demonstrated defendant and M.S. were involved in a long-term on-and-off

---

[1]     Further undesignated section references are to the Penal Code.

relationship. While defendant was restrained from contacting M.S., he broke into her house while under the influence of drugs. When M.S. asked defendant to leave, he accused her of seeing other men, pinned her on the bed, bit her neck, and pinched her breast. Defendant then moved down M.S.'s body and bit her pelvic area. M.S. pushed defendant off her and defendant grabbed a baseball bat M.S. kept nearby due to defendant's prior conduct. Defendant hit the walls of the room with the bat before discarding it and moving towards M.S. M.S. grabbed a heavy flashlight and hit defendant, he then wrestled it from her, which made M.S. grab the baseball bat. Defendant left. Defendant then came back. He pinned M.S. to the bed and slapped her face, leaving a mark.

While M.S. spoke with officers about the incident, defendant texted her, "You are really doing this right now? I'm going to have a reason why you don't answer me.… Do not talk to the cops. You called 911. I literally just heard it on the scanner." M.S. later told the officer about text messages defendant had sent her describing her location. At trial for the stalking case, evidence of defendant's conduct before and after September 2021 was admitted. For example, in June 2015, defendant came to M.S.'s home, threw rocks at her window, and pushed her to the ground, breaking her wrist. During this incident, defendant called M.S. names and also threw rocks at her face. In July 2021, while defendant was under a restraining order, he went to M.S.'s home and scratched the rear end of her car. Also in July 2021, while under a restraining order, defendant walked by M.S.'s house while M.S. was with her daughter outside. In November 2021, defendant, while under a restraining order, vandalized M.S.'s car, and the next day went to M.S.'s house and yelled at her before further damaging her car. Defendant later dissuaded M.S. from testifying in the stalking case, which he was later charged with and convicted of in case No. 23CF04886 (dissuading a witness case).

After being charged in the stalking case, defendant was released on bail and ordered to appear. He did not appear, and he was eventually detained and charged with a

2

single count of failure to appear in case No. 23CF00879 (failure to appear case). At the trial for the failure to appear case, the prosecution relied exclusively on documentary evidence to prove its case. Defense counsel made multiple objections to each exhibit.

Ultimately, the court admitted at the trial for the failure to appear case: (1) a felony complaint charging defendant with three felony counts committed between July and November 2021 (felony case); (2) a March 2022 minute order in the felony case indicating defendant was denied release on his own recognizance and granted bail in the amount of $225,000; (3) a statement of rights in the felony case that included an agreement by defendant that he appear at all times and places ordered by the trial court or risk new charges; (4) a June 2022 information in the felony case charging three felonies; (5) an October 2022 minute order in the felony case indicating defendant was released on bail; (6) a January 2023 minute order in the felony case indicating defendant failed to appear and that his bail was forfeited; (7) a notice produced by the trial court that defendant's bail had been forfeited due to his failure to appear for a trial readiness conference in the felony case; (8) a June 21, 2023 minute order in the felony case indicating that, while defendant was in custody, he was not able to be transported to court because "defendant refused transport"; (9) a June 28, 2023 minute order in the felony case indicating defendant was present for a hearing setting jury trial; and (10) a July 2023 minute order in the failure to appear case indicating defendant acknowledged he was being charged with a crime and waived a preliminary examination in the matter. The jury found defendant guilty of failure to appear.

Defendant was sentenced to an aggregate term of nine years for the stalking case, dissuading a witness case, and failure to appear case. The trial court imposed the upper term of five years for stalking based on aggravating circumstances that defendant had three prior felony convictions since 2006, served prior prison terms related to those convictions, and was unsuccessful on probation or parole, none of which were submitted to a jury or admitted to by defendant. It then sentenced him to consecutive sentences of

one-third the midterm for corporal injury (one year four months) and failure to appear (eight months), and then a consecutive full term of two years for dissuading a witness. The trial court imposed a concurrent term of one year for the misdemeanor sexual battery conviction.

Defendant appeals.

DISCUSSION

I

*There Was No Evidentiary Error*

Defendant raises several issues of evidentiary error, which we review for an abuse of discretion.  (*People v. DeHoyos* (2013) 57 Cal.4th 79, 131.)  " 'To establish an abuse of discretion, defendants must demonstrate that the trial court's decision was so erroneous that it "falls outside the bounds of reason." [Citations.]  A merely debatable ruling cannot be deemed an abuse of discretion.  [Citations.]  An abuse of discretion will be "established by 'a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' "  (*People v. Johnson* (2022) 12 Cal.5th 544, 605-606.)

A

*The Trial Court Did Not Err By Admitting The Statement "Defendant*<br>*Refused Transport" Contained In The June 21, 2023 Minute Order*

Defendant contends the trial court abused its discretion by admitting into evidence a statement contained in the June 21, 2023 minute order providing "defendant refused transport" because the statement was hearsay and violated his right to confront witnesses. The People focus on the trial court taking judicial notice of the minute order, which did not extend to admitting statements contained in the minute order for the truth.  While true the court granted judicial notice of the minute orders, the distinction between items admitted into evidence and those given judicial notice was not explained to the jury, and the prosecutor argued the truth of the contents of the judicially noticed documents during

4

closing argument. Further, defense counsel objected to the statement's inclusion on relevance, prejudice, and hearsay grounds, noting the statements did not accurately reflect his recollection. The trial court explicitly overruled the relevance and prejudice objections, leaving defendant's hearsay objection unresolved. Given this record, and the People's failure to argue forfeiture, we conclude the court impliedly found the statement "defendant refused transport" was not hearsay and did not violate defendant's right to confront witnesses. We further conclude the trial court did not err in doing so.

1

*The Statement Is Not Hearsay*

For hearsay, the People point to Evidence Code section 1280, concerning records of a public employee. This hearsay exception applies if (1) the record was made by a public employee within the scope of official duties; (2) it was made at or near the time of the act, condition, or event depicted; and (3) the source of information and method and time of preparation indicate its trustworthiness. (Evid. Code, § 1280.) The parties do not dispute clerks are public employees required to keep the minutes and records of the court (Gov. Code, § 69844) or that the minutes were made near the time of the event depicted.

The thrust of defendant's disagreement as to the applicability of Evidence Code section 1280 is the final element, that the statement lacked sufficient indicia of trustworthiness, given defense counsel's recollection of the event and the clerk's lack of personal knowledge regarding the contents of the statement. But the language of Evidence Code section 1280 does not require the public employee to have personal knowledge of the contents of the record, only that the source of the information indicates its trustworthiness. Here, it was not arbitrary or capricious for the trial court to find the manner of preparation and source of information were sufficiently trustworthy. The information regarding defendant's transportation status was communicated in open court through procedures regularly utilized by the government to transfer inmates to court and with both parties present and capable of correcting or adding to the record prepared by

5

the clerk. To the extent defense counsel remembered the facts concerning defendant's nonappearance differently, that is a question as to weight and not admissibility. (See *People v. Morales* (2020) 10 Cal.5th 76, 97 [when sufficient knowledge of a subject is established, the degree of knowledge is a question of weight more than admissibility]; *People v. Cook* (2007) 40 Cal.4th 1334, 1346 [challenges to quality of scientific testing are all matters going to weight, not admissibility].) Accordingly, the court did not abuse its discretion by determining the statement "defendant refused transport" contained in the June 21, 2023 minute order fell within a hearsay exception.

2

*The Statement Did Not Violate Defendant's Confrontation Right*

Defendant also contends the statement's inclusion violated his right to confront witnesses because the statement was testimonial in nature. To assess whether a particular statement was testimonial, we objectively consider all the circumstances to determine whether the primary purpose of the statement was to create a record for criminal prosecution. (*Ohio v. Clark* (2015) 576 U.S. 237, 244-245; see also *Davis v. Washington* (2006) 547 U.S. 813, 822 [explaining that statements "are testimonial when the circumstances objectively indicate … the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution"]; *People v. Gallardo* (2017) 18 Cal.App.5th 51, 66 [" 'the statement must have been given and taken primarily for the purpose ascribed to testimony—to establish or prove some past fact for possible use in a criminal trial' "].)

Here, the statement was given as part of the administrative process of tracking defendant's transportation and appearance in court. The statement was not made for evidentiary purposes or to build a factual record for use in a criminal trial. Defendant disagrees, arguing the primary purpose of the statement cannot be merely administrative because it was made in the context of defendant's failure to appear case. Not so. The statement was made in the context of transporting defendant to court *for his stalking case*.

6

Defendant's failure to appear case, while filed, was not the subject of the proceeding reflected in the June 21, 2023 minute order and defendant's appearance would have been noted by the clerk regardless of the existence of the failure to appear case. Thus, the court did not err by finding the statement "defendant refused transport" in the June 21, 2023 minute order did not violate defendant's right to confront witnesses.

B

*The Trial Court Did Not Abuse Its Discretion By Finding*

*Several Court Documents Relevant And Not Unduly Prejudicial*

As he did in the trial court, defendant challenges several items of evidence admitted during his failure to appear trial as being irrelevant or unduly prejudicial. We disagree with each of these challenges and address them in turn.

The rules of evidence pertaining to defendant's challenges are well established. Only relevant evidence is admissible. (Evid. Code, § 350.) Relevant evidence is "evidence … having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352; see *People v. Merriman* (2014) 60 Cal.4th 1, 74.)

Defendant first challenges admission of the complaint and information filed in defendant's stalking case, i.e., the underlying felony charges supporting his failure to appear charges. He argues the court should have redacted two of the three felony charges because it was only necessary for the prosecution to prove defendant was charged with a single felony. Defendant has not shown an abuse of discretion. The court redacted the crimes charged for each felony minimizing potential prejudice regarding the underlying allegations. The fact defendant was charged with more than one felony was probative to assessing defendant's motivation to evade court, and listing three unspecified felony

7

charges does not exert undue prejudice on that assessment. Accordingly, the trial court did not abuse its discretion by admitting the complaint and information from defendant's felony case.

Defendant next contends the trial court abused its discretion by admitting into evidence the March 2022 minute order because it provided defendant was denied release on his own recognizance and bail was set at $225,000. To defendant, this was unduly prejudicial because it communicated to the jury that a judge believed defendant was a flight risk. We again discern no abuse of discretion. The minute order was relevant to show the timeline of defendant's case and the fact he was granted bail, which in turn explained his later release from custody, forfeiture of bail, and denial of bail. Defendant provides no indication how the amount of bail and the fact defendant was denied release on his own recognizance invited the jury to rely on the judge's prior decisions instead of making its own independent findings. To the contrary, the minute order gave no legal standards contextualizing the judge's decisions to grant bail and deny defendant release on his own recognizance. Accordingly, the trial court did not abuse its discretion by admitting the March 2022 minute order.

Finally, defendant contends the trial court abused its discretion by admitting the statement of rights, wherein defendant agreed to appear to all court ordered hearings and acknowledged failure to do so would constitute a new charge. Defendant argues this document lacked proper foundation and was unduly prejudicial because defendant's knowledge was not an element of failure to appear and created the impermissible inference that defendant had the propensity to evade court.

As to foundation, there is adequate indicia the statement of rights was signed by defendant. (See *People v. Lucas* (1995) 12 Cal.4th 415, 466-467 [proper foundation is laid when the court is satisfied a preliminary fact was proved by a preponderance of the evidence].) The statement of rights was a document submitted to the court in defendant's case and certified by his counsel. There was no need to further lay foundation for the

8

document.  As to prejudice, while defendant's knowledge may not be an element of the crime of failure to appear, it is probative to whether he failed to appear for the purpose of evading the process of the court.  (§ 1320.5.)  Knowing the harsh consequences for failing to appear tends to prove defendant either had a good reason for doing so or did so to avoid punishment in the underlying case.  Either way, defendant's acknowledgment of the statement of rights is relevant.  It was further not an abuse of discretion for the trial court to find this relevance was not outweighed by the risk of undue prejudice.  It was not unreasonable for the court to conclude the jury would not make an adverse inference about the character of any one defendant from a standardized form informing a defendant of the consequences of a nonappearance.  Nor is it reasonable the jury would infer defendant had a propensity to evade the court process through the generalized statement.  Accordingly, the trial court did not abuse its discretion by admitting the statement of rights signed by defendant.

## II

### *There Was No Prosecutorial Error*[2]

During closing argument in defendant's failure to appear trial, the prosecutor argued:  "[T]here's this presumption that you get to have [related to] intent.…  [¶]  …  But the law in this kind of case actually gives you a presumption that if the [d]efendant did not come back to court within 14 days after the date he was ordered to appear, you all may presume that it was for the purposes of evading the court process.  You can just presume that.  Because he didn't come back for almost five months.  This presumption only requires 14 days.  [¶]  So, [m]embers of the [j]ury, you don't even have to worry

---

[2]     Defendant often refers to the prosecutor's conduct as misconduct.  "[T]he term prosecutorial 'misconduct' is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind.  A more apt description of the transgression is prosecutorial error."  (*People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)

about thinking about the intent of his actions. You can rely on this presumption because it's established he was gone for more than 14 days."

Defendant contends this constituted prosecutorial error because defendant's willful failure to appear for over 14 days is not a legal presumption that the failure to appear was for the purpose of evading the process of the court, but merely an *inference* the jury is permitted to draw by statute. (§ 1320.5 ["Willful failure to appear within 14 days of the date assigned for appearance may be found to have been for the purpose of evading the process of the court"].) Defendant acknowledges his counsel did not object in the trial court and consequently raises an ineffective assistance of counsel claim regarding that failure. We exercise our discretion to review defendant's claim and conclude it was not reasonably likely the jury applied the complained of remarks in an erroneous manner. (*People v. Torres* (2025) 113 Cal.App.5th 88, 92.)

" '[I]t is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements [citation].' [Citation.] Improper comments violate the federal Constitution when they constitute a pattern of conduct so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process. [Citation.] Improper comments falling short of this test nevertheless constitute misconduct under state law if they involve use of deceptive or reprehensible methods to attempt to persuade either the court or the jury. [Citation.] To establish misconduct, defendant need not show that the prosecutor acted in bad faith. [Citation.] However, [defendant] does need to 'show that, "[i]n the context of the whole argument and the instructions" [citation], there was "a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.[" ]' [Citation.] If the challenged comments, viewed in context, 'would have been taken by a juror to state or imply nothing harmful, [then] they obviously cannot be deemed objectionable.' " (*People v. Cortez* (2016) 63 Cal.4th 101, 130.)

Here, the prosecutor's statements implied there was a presumption, versus a permissive inference, of defendant's intent given the length of his absence from court process. While the prosecutor used the word presumption, he did not indicate to the jury that it was *required* to make such a finding given the length of defendant's absence. Further, the jury instructions accurately provided that the jury may, but was not required to, infer defendant's nonappearance over 14 days was for the purpose of evading the process of the court. The jury was also instructed to follow the law as explained by the court and reject conflicting statements made by attorneys, undermining defendant's claim the jury was more likely to believe the prosecutor than the court regarding statements of law. Taken together, defendant cannot demonstrate a reasonable likelihood the jury understood or applied the prosecutor's remarks in an erroneous manner.

## III

### *There Was No Cumulative Error*

Defendant argues cumulative error resulted from the combined errors related to his evidentiary and prosecutorial error claims. Because we concluded there was no error affiliated with defendant's evidentiary and prosecutorial error claims, we conclude there was no cumulative error. (*People v. Chatman* (2006) 38 Cal.4th 344, 410.)

## IV

### *The Court's Reliance On Defendant's Prior Prison Terms And Unsuccessful Performance On Probation/Parole To Impose An Upper Term Was Harmless*

Defendant contends the trial court erred by relying on his prior prison terms and unsuccessful performance on parole/probation to impose the upper term sentence for stalking. We agree the court could not have relied on defendant's prior prison terms and performance on parole and probation, but conclude the error was harmless.

Recently, in *People v. Wiley* (2025) 17 Cal.5th 1069 (*Wiley*), our Supreme Court held that, under both section 1170 and the Sixth Amendment, "a defendant is entitled to a jury trial on all aggravating facts, *other than the bare fact of a prior conviction and its*

11

*elements*, that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm." (*Wiley*, at p. 1086, italics added, fn. omitted; see *id*. at pp. 1081, 1085-1086.) " '[A] judge may "do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of." ' " (*Wiley*, at p. 1081.) A jury, and not a judge, must determine whether a defendant has performed unsatisfactorily on probation or parole before a court may rely on that aggravating fact to justify an upper term sentence. (*Id*. at p. 1085.) Here, the trial court did more than determine the bare fact of a prior conviction and its elements, and that constituted error.

The People argue that, even though the trial court erred, the error was harmless because any rational jury would have found true beyond a reasonable doubt defendant served a prior prison term related to his prior convictions and was unsuccessful on parole and probation. We agree.[3]

" '[A] sentence imposed under ... section 1170[, subdivision ](b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute.' " (*Wiley*, *supra*, 17 Cal.5th at p. 1087.) "Lack of a jury trial is not harmless under [the federal standard] if 'the record contains evidence that could rationally lead to a contrary finding' with respect to the aggravating fact at issue." (*Ibid*.)

One factor the trial court relied on when imposing an upper term sentence for the stalking case was defendant's prison terms for his prior stalking, corporal injury, and drug felony convictions. Defendant's probation report indicates he served a prison

---

[3]     The parties rely on the probation report to determine prejudice. We will do the same. (See *Wiley*, *supra*, 17 Cal.5th at p. 1090, fn. 14.)

sentence for stalking after his probation for that offense was revoked. Similarly, defendant was sentenced to a prison term for corporal injury and his felony drug offenses. Defendant argues this is insufficient to meet the harmless beyond a reasonable doubt standard because a jury may disagree with the court's finding. Defendant's argument fails because he does not point to contrary evidence presenting an ambiguity as to whether he served prior prison terms. Thus, the trial court relying on defendant's prior prison sentences as an aggravating factor was harmless beyond a reasonable doubt.

As for defendant's prior performance on parole, probation, and postrelease community supervision, *Wiley* provides more specific guidance. (*Wiley*, *supra*, 17 Cal.5th at p. 1090.) In that case, there was evidence of the defendant's performance on probation in three cases. (*Ibid*.) In one, he "successfully completed a residential drug treatment program, obtained his driver's license, paid all court ordered fines and fees, and committed no probation violations. In two other cases, [his] performance on probation was 'marked by probation violations due to his arrest and conviction of new misdemeanor and felony law violations.' Probation was revoked and a prison term was executed. After his release from prison on postrelease community supervision, [he] was convicted of a new misdemeanor offense, but 'was fairly compliant during the remainder of his supervision term.' " (*Id*. at pp. 1090-1091.)

The People in that case argued that " '[b]ecause committing an offense on probation is such a clear violation of both the letter and spirit of probation's strictures, no rational jury could conclude that a defendant who committed crimes two out of the three times that he was on formal probation had performed satisfactor[ily] on probation.' " (*Wiley*, *supra*, 17 Cal.5th at p. 1091.) Our Supreme Court rejected this argument and noted that the probation report listed the defendant's performance on probation as both an aggravating and mitigating factor, and so the court "[could not] discount the possibility that either counsel in a contested jury trial might have presented live testimony on this factor that would have affected the jury's determination. [Citation.] Nor [could it]

13

discount the possibility that a rational jury could have disagreed as to whether the [prosecution] had proved that [the defendant's] overall performance on probation was unsatisfactory." (*Ibid*., italics omitted.) Accordingly, our Supreme Court found the error was not harmless. (*Ibid*.)

Our case is not similar to *Wiley*. Unlike *Wiley*, there is no evidence in the record demonstrating defendant ever successfully completed probation, parole, or postrelease community supervision. Following defendant's 2006 stalking conviction, defendant violated probation, his probation was revoked, and he served a prison sentence. He then violated parole multiple times and was returned to custody to finish his prison sentence. Following defendant's felony convictions for corporal injury and a drug offense, he was sentenced to prison. Upon release, defendant violated postrelease community supervision three times in six months. Further, between these felony convictions, defendant was convicted of other drug offenses for which he was given probation. Defendant did not successfully complete probation for these offenses either.

Defendant contends his drug addiction mitigated his violations such that a jury could reasonably find his performance was overall successful. We disagree. Defendant's argument explains why he was unsuccessful, it does not present evidence of success. While defendant's drug use may influence his criminal behavior, the record reflects consistent and repeated probation/parole violations and drug offenses. In other words, there is no indication defendant successfully used probation, parole, or postrelease community supervision as a means of addressing the causes of his criminal behavior. Accordingly, unlike the court in *Wiley*, we cannot conclude that defendant could have presented live testimony on this aggravating factor that would have affected a jury's determination. Thus, the trial court's error was harmless beyond a reasonable doubt.

14

V

*Substantial Evidence Supports The Trial Court's Decision Under Section 654*

Defendant raises two sentencing challenges under section 654.  We disagree with both.

A

*Applicable Law*

Section 654, subdivision (a), prohibits "punish[ment] under more than one provision" for "[a]n act or omission that is punishable in different ways by different provisions of law."  Our Supreme Court has long applied section 654 " ' "not only where there was but one 'act' in the ordinary sense … but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654." ' "  (*People v. Beamon* (1973) 8 Cal.3d 625, 637.)  " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor.  If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' "  (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208, italics omitted.)

Multiple punishments are also permissible where a course of criminal conduct is divisible in time and " 'the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her [or their] intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken' " and creating a " 'new risk of harm.' "  (*People v. Gaynor* (2019) 42 Cal.App.5th 794, 800, 804; see *People v. Peyton* (2014) 229 Cal.App.4th 1063, 1080.)

"The question of whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination."  (*People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1113.)

Generally, "a trial court may base its decision under section 654 on any of the facts that are in evidence at trial," even those that may not have been the basis for the jury's verdicts. (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1340, italics omitted.) We review the trial court's express or implied findings for substantial evidence. (*People v. Vasquez* (2020) 44 Cal.App.5th 732, 737.) To that end, we "review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

B

*Section 654 Does Not Apply To The Stalking And Corporal Injury Sentences*

Defendant contends he could not be sentenced to both corporal injury and stalking because his corporal injury was the means by which he accomplished the stalking. Not so.

The offense of stalking occurs when the defendant "willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and … makes a credible threat with the intent to place that person in reasonable fear for their safety, or the safety of their immediate family." (§ 646.9, subd. (a).) A " 'course of conduct' means two or more acts occurring over a period of time, however short, evidencing a continuity of purpose." (§ 646.9, subd. (f).) Corporal injury occurs when a defendant "willfully inflicts corporal injury resulting in a traumatic condition." (§ 273.5, subd. (a).)

The record contains ample evidence of stalking apart from defendant's assaultive conduct inside M.S.'s home. Defendant texted M.S. about her location, showed up at her home while under a restraining order, and vandalized her car. He monitored 911 calls and threatened M.S. after the assault. This was done with the objective of harassing M.S. and putting her in fear for her safety. (§ 646.9, subd. (a).) On the other hand, defendant's conduct of committing corporal injury and sexual battery by breaking into M.S.'s home and assaulting her, was done with the objective of inflicting injury. (§ 273.5.) These are

16

separate objectives defendant accomplished through divisible conduct. Accordingly, the court did not err by finding section 654 did not apply to defendant's stalking and corporal injury convictions.**4**

C

*Section 654 Does Not Apply To The Corporal Injury And Sexual Battery Convictions*

Defendant also contends he could not be sentenced to both corporal injury and misdemeanor sexual battery because both convictions are based on the same conduct. Not so.

The evidence demonstrated defendant attacked M.S. by pinching her breasts, biting her neck, and biting her pelvic area. Defendant then left the home, which provided an opportunity for reflection. Instead of leaving, defendant reentered M.S.'s home, pushed her on the bed, and slapped her face, leaving a mark. With his reentry of M.S.'s home, defendant increased the risk of harm and renewed his criminal purpose, justifying multiple punishments.

Defendant argues the prosecution should be precluded from bifurcating defendant's conduct into two courses of action since it argued to the jury it could rely on all of M.S.'s injuries when deciding whether defendant committed corporal injury. But that is not the test under section 654. "[A] trial court may base its decision under section 654 on any of the facts that are in evidence at trial," even those that may not have

---

**4** Defendant also argues the trial court erred by failing to impose his corporal injury sentence concurrent to his stalking sentence. He acknowledges his counsel did not object on this basis, which consequently forfeits defendant's claim regarding the adequacy of the court's reasons justifying its decision. (*People v. Scott* (1994) 9 Cal.4th 331, 353 [the defendant forfeits "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" by failing to object].) Defendant, however, argues he did not forfeit his consecutive sentence claim to the extent the resulting sentence was unauthorized, raising the same argument he raises in this section 654 challenge. Because we concluded defendant's section 654 challenge lacks merit, we conclude his consecutive sentence claim based on the same reasoning also lacks merit.

17

been the basis for the jury's verdicts.  (*People v. McCoy*, *supra*, 208 Cal.App.4th at p. 1340, italics omitted.)  For the purposes of sentencing under section 654, we review the trial court's decision for substantial evidence.  (*People v. Vasquez*, *supra*, 44 Cal.App.5th at p. 737.)  Here, the court impliedly found defendant renewed his criminal objective between the sexual battery and corporal injury offenses.  This finding is supported by substantial evidence in the record.  Accordingly, section 654 did not apply to defendant's corporal injury and sexual battery sentences.

DISPOSITION

The judgment is affirmed.


/s/
ROBIE, Acting P. J.

We concur:


/s/
FEINBERG, J.


/s/
WISEMAN, J.*

---

*      Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.